UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON

Civil Action No. 14-157-HRW

RICKY COLLETT,                                                           PLAINTIFF,

v.                    **MEMORANDUM OPINION AND ORDER**

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits, alleging disability beginning on January 25, 2011, due to myriad physical and mental impairments (Tr. 211). This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted via video by Administrative Law Judge Christopher R. Daniels (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Betty L. Hale, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 13-21).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of disability through his date last insured (Tr. 14).

The ALJ then determined, at Step 2, that Plaintiff suffers from degenerative disc disease of the cervical and thoracic spine, status post aneurysm with mild residual effects and depression, which he found to be "severe" within the meaning of the Regulations (Tr. 15).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 15-16).

The ALJ further found that Plaintiff could not return to as a truck driver or coal miner past relevant work (Tr. 20) but determined that he has the following residual functional capacity

2

("RFC"):

> ... perform less than the full range of light work as defined in 20 CFR 404.1567(b). He is able to occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; sit, stand, or walk six hours each in an eight hour day. He is able to frequently climb ramps or stairs, balance, kneel and crouch. He is able to occasionally stoop and crawl. He is unable to climb ladders, ropes or scaffolds. He can tolerate occasional exposure to extreme cold, wetness, and vibration. He can perform frequent reaching overhead, handling, fingering, and feeling on the right side. Mentally, he is able to perform simple routine tasks for two-hour periods over the course of the workday and workweek. He can frequently interact with coworkers and supervisors and occasionally interact with the general public.

(Tr. 16).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 20).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 10 and 11] and this matter is ripe for decision.

## II. ANALYSIS

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner*

*v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

On appeal, Plaintiff contends that the ALJ erred in relying upon the VE's testimony that there exists other work he can perform in significant numbers in the national economy. Specifically, she maintains that the testimony of the VE conflicted with the Dictionary of Occupational Titles ("DOT").

Under Social Security Ruling ("SSR") 00-4p, the ALJ has a duty to ensure there is consistency between the vocational expert's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." *See* 2000 WL 1898704, at *2. If the vocational expert's testimony "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *4. In that circumstance, the ALJ must explain in the decision how he or she resolved the conflict. *Id.* If the ALJ questions the vocational expert and she testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the vocational expert, particularly where the plaintiff is afforded a full opportunity to cross-examine the VE. *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th

Cir. 2006).

The ALJ posed the following hypothetical to the VE:

> ... a younger individual between the ages of 41 and 43 years old with a high school education and the past work we've described. The individual would be able to occasionally lift or carry up to 20 pounds. The individual could frequently lift or carry up to ten pounds. The individual could sit, stand, or walk for six hours each in an eight-hour period. The individual could occasionally stoop and crawl. The individual could frequently climb ramps or stairs, balance, kneel and crouch. The individual would be unable to climb ladders, ropes or scaffolds. The individual could perform frequent reaching overhead, handling, fingering, and feeling on the right side and would have no limitations in the use of the upper extremity on the left side. The individual can tolerate occasional exposure to extreme cold, wetness, and vibration. Finally, the individual would be limited to simple, routine, repetitive tasks for two-hour periods and can tolerate frequent interaction with coworkers and supervisors and occasional interaction with the public.

(Tr.48).

In response, the VE testified that with the limitations contained in the hypothetical that the Plaintiff could still be able to perform the jobs of small products assembly, hand packing, and machine attendant and that these jobs exist in significant numbers in the national economy. (Tr. 49). The ALJ asked the VE if her testimony was consistent with the DOT and testified that it was. *Id.* Although afforded the opportunity to examine the vocational expert, Plaintiff's counsel did not question her about any apparent inconsistencies between her testimony and the DOT relating to reasoning levels.

Plaintiff argues that the limitation to simple, routine, repetitive tasks for two-hour time periods, to which the ALJ found Plaintiff was limited (Tr. 16), conflicts with the fact that the DOT defines the jobs of small products assembler, hand packager, and machine attendant as having a General Educational Development ("GED") level of 2 . Plaintiff misconstrues what the GED

5

represents. GED t does not describe the duties, requirements, or the particular demands of any particular occupation listed in the DOT. Rather, GED describes the general terms the educational level expected of someone who performs a given occupation.

Residual functional capacity, on the other hand, represents the most a claimant can do, despite the physical or mental limitations caused by his medical impairments, and does not incorporate educational background. *See* 20 C.F.R. § 404.1545(a) and © (defining residual functional capacity and enumerating mental abilities, including understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures), 404.1560© (distinguishing between residual functional capacity and vocational characteristics, including education, considered at step five). GED, therefore, does not reasonably correlate to residual functional capacity.

Here, Plaintiff has worked in the past in a semiskilled and a skilled job with GED levels of 3 and 4 respectively, and has a high school education, which is an educational level that prepares an individual for skilled work, his argument that he cannot perform unskilled GED level 2 work should be rejected.

Further, the Sixth Circuit has made clear that "neither the Commissioner nor the VE has an obligation to employ the DOT, and there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications ...." *Monateri v. Comm'r of Soc. Sec.*, 436 Fed. App'x. 434, 446 (6th Cir.2011). In *Monateri,*, the Court upheld the ALJ's residual functional capacity of simple and routine work even though the vocational expert was not asked to limit his answers to jobs at reasoning level of one. *Id.* Thus, the Court rejected "the proposition that jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work." *Id.*

Based upon the foregoing, Plaintiff's contention that the reasoning level required of the jobs cited by the VE is inconsistent with his abilities is erroneous.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 25th day of September, 2015.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

---

Henry R. Wilhoit, Jr., Senior Judge